# Frank Kunkle *v.* People's Natural Gas Co., Appellant.

*Lease—Oil and gas lease—Rent—Covenant of title—Outstanding title in wife—Questioning landlord's title.*

An owner of land executed an oil and gas lease for the term of ten years. The consideration was a portion of the oil, and a money rental for each paying well. The lessee covenanted to begin operations within six months from the execution of the lease, and to complete one well, or pay plaintiff the sum of five hundred dollars, and further agreed to pay one hundred and thirty dollars as rental until the completion of the first well. The grant was for the exclusive right to drill and bore for oil and gas. The lessee did nothing in the way of development during the first six months. The lessor demanded the rental and royalty then due, six hundred and thirty dollars. The lessor then disclosed the fact that his wife had an interest in the land. The lessee demanded that the wife should join in the lease, and the lessor assented to this, and it was agreed that the lessee should send an agent to secure the wife's signature. This, however, was never done. It appeared that the wife was present at the negotiations which led to the execution of the lease, and that she did not then or afterwards make any objection to it. The lessee retained possession of the lease, and did not surrender it until after suit was brought for the rent, when it was unconditionally surrendered. *Held,* that the lessee was liable for the rent and the royalty for the first six months.

Argued Oct. 1, 1894. Appeal, No. 2, Oct. T., 1893, by defendant, from judgment of C. P. Westmoreland Co., August Term, 1891, No. 507, on verdict for plaintiff. Before STER-

RETT, C. J., GREEN, WILLIAMS, MCCOLLUM, MITCHELL, DEAN
and FELL, JJ.   Affirmed.

Assumpsit on oil and gas lease.   Before DOTY, P. J.

The facts appear by the opinion of the Supreme Court.
Plaintiff's wife had an undivided half interest in the fee of the
leased premises.

The court gave binding instruction for plaintiff.

Verdict and judgment for plaintiff.   Defendant appealed.

*Error assigned* was above instruction, quoting it.

*W. S. Miller,* for appellant.—If defendant took the lease
under a mistake or in ignorance of the fact that plaintiff only
had title to the half, equity would grant relief against the les-
sor who pretended to have the whole title : Mays v. Dwight,
82 Pa. 464; Miles v. Stevens, 3 Pa. 21; Gibson v. Co., 3
Watts, 32; Horbach v. Gray, 8 Watts, 492; Geiger v. Cook,
3 W. & S. 266 ; Jenks v. Fritz, 7 W. & S. 201 ; Hamilton v.
Marsden, 6 Bin. 45 ; Baskin v. Seechrist, 6 Pa. 154; Koontz v.
Hammond, 62 Pa. 182 ; 1 Washb. R. Prop. *315; Taylor, L. & T.
§ 707 ; Gleim v. Rise, 6 Watts, 44; Clark v. Conroe, 38 Vt.
469 ; Wilson v. Cochrane, 46 Pa. 229.

An oil and gas lease, such as the one sued on, is different
from a lease of a tenement house in a village or city, or the
lease of a farm for agricultural purposes : Stoughton's Ap.,
88 Pa. 198 ; Fúnk v. Haldeman, 53 Pa. 229; Yeakle v. Jacob,
33 Pa. 376 ; Huff v. McCauley, 53 Pa. 206 ; Henry v. Colby,
3 Brewst. 171.

A grant of the " exclusive right to mine, take and carry
away all the coal in and underlying a tract of land " is equiva-
lent to a conveyance of the coal itself : Caldwell v. Fulton, 31
Pa. 484; Armstrong v. Caldwell, 53 Pa. 287.

The word " lease " has been held to be equivalent to demise
in creating an implied covenant.   These words " lease " or " de-
mise " imply a covenant against a paramount title: 1 Washb. R.
Prop. *325 ; 3 Ib. *462; Maule v. Ashmead, 20 Pa. 482 ; Ross
v. Dysart, 33 Pa. 452; 3 Washburn, R. Prop., p. 99.

A court of equity will not compel specific performance of a
contract for the sale of land, unless the vendor can make a

marketable title: Nicol v. Carr, 35 Pa. 381; Freetly v. Barn-hart, 81 Pa. 279; Hammer v. McEldowney, 46 Pa. 334.

*Edward E. Robbins, John E. Kunkle* with him, for appellee.—The tenant cannot dispute his landlord's title: Martin v. Holt, 51 Pa. 503; Seyfert v. Bean, 83 Pa. 452; Bedford v. Kelly, 61 Pa. 491; Baskin v. Seechrist, 6 Pa. 163; Cooper v. Smith, 8 Watts, 540; Jackson & Gross, L. & T., sec. 615; Kline v. Johnston, 24 Pa. 72.

A lease of oil and gas is merely a grant of possession for mining purposes: Barnhart v. Lockwood, 152 Pa. 84; Glasgow v. Oil Co., 152 Pa. 48; Venture Oil Co. v. Fretts, 152 Pa. 451; Wettengel v. Gormley, 160 Pa. 567.

Mrs. Kunkle never did anything against the lease, but on the contrary was always anxious to have it stand. When a principal has been informed of what has been done by his agent, he must dissent and give notice of it in a reasonable time: Kelsey v. Bank, 69 Pa. 426; Schrack v. McKnight, 84 Pa. 29; Bredin v. Dubarry, 14 S. & R. 26; Porter v. Patterson, 15 Pa. 229; Endlich and Richards, Married Women, p. 282.

Defendant company, by the lease from Kunkle, obtained that which they contracted for, and under the rulings of the Supreme Court they must pay for what they have received: Galey v. Kellerman, 123 Pa. 496; Wills v. Gas Co., 130 Pa. 233; Gas Co. v. De Witt, 130 Pa. 252; Kitchen v. Smith, 101 Pa. 457; Leatherman v. Oliver, 151 Pa. 650.

OPINION BY MR. JUSTICE DEAN, Jan. 7, 1895:

This action was assumpsit for rental on a lease of the gas and oil on a tract of 130 acres of land in Washington township, Westmoreland county. The term was ten years. The consideration was one sixth of the oil and $500 annually for each paying gas well. The defendant covenanted to commence operations within six months from the execution of the lease, and complete one well, or pay to plaintiff the sum of $500, and further agreed to pay $130 as rental until the completion of the first well. The right to occupancy of the land for cultivation was reserved by plaintiff. The lease was to take effect at the date of it, which was the 20th of September, 1889. On that day it was delivered to defendant, and remain-

ed in its possession until after suit brought, a period of more
than one year and nine months. The grant was for the "ex-
clusive right to drill, bore, excavate and produce" oil and gas
on the 130 acres of land; defendant to hold the right for the
period of ten years for that purpose; one well to be completed
every year, until four wells were drilled; if not drilled, the
royalty, $500, to be paid the same as if drilled.

The defendant did nothing in the way of development the
first six months, which expired the 20th of March, 1890.
About the second of April, 1890, the plaintiff went to the office
of defendant in Pittsburg, and demanded the rental and royal-
ty then due, $630.    There was a dispute as to the amount act-
ually due at that time, the plaintiff claiming that the agent of
the company, when the lease was delivered, had promised him
a bonus of $260, one half to be paid in two or three weeks,
which had not been done.    Mr. Pew, the president of the com-
pany, refused to pay this, and while not denying the liability
of the company for the $630 stipulated for in the lease, did not
pay or offer to pay any part of it.    Before this interview closed,
Kunkle made known the fact that his wife had an interest in
the land; the defendant then demanded that the wife sign
the lease; to this Kunkle assented, and the president of the
company promised to send the lease out to their home by an
agent that the wife might also join.    This promise he did not
keep.    The wife was present at the negotiations which resulted
in the execution of the original lease, and, so far as appears,
concurred in the contract made by her husband; and there is
no evidence that she then or afterwards made any objection.
The president, however, insisted on retaining in possession of
the company the lease, until the wife joined in it.    On the
19th of April following this interview, the company wrote to
Kunkle, offering to surrender the lease if he would execute to
it a written release and discharge of all rights to rent or royal-
ty.    This he refused to do, and the company, as before noted,
retained the lease up until after the commencement of this suit,
when it unconditionally surrendered it.

The complaint of appellant is, that the contract signed by
Kunkle implied a covenant of title to the entire estate in the
land, and as the evidence showed a fractional interest in his
wife, the covenant was broken as soon as made, and therefore
there could be no recovery by plaintiff.

It will be noticed, the grant was for the exclusive right to drill, bore, excavate and produce for a period of ten years. Whether the apparent approval by the wife during the negotiations and agreement on terms in her presence, and her silence for more than six months after the delivery of the lease, would, in equity, estop her from asserting a right antagonistic to it, it is not material to inquire. She never did object. The defendant had no knowledge of her interest until its obligation to pay was fixed by the lapse of the stipulated six months. On knowledge of her interest defendant did not at once surrender but held on to the lease. During that time, it had the right to do either of two things : first, sink one well, or, second, do nothing and pay $630. In either event, its exclusive right, as against the plaintiff, remained; he could not grant an exclusive right to another, for he had, so far as he could do so, already granted it to defendants; nor could his wife grant such right, for the husband, in the face of his contract with defendant, could not join her. The defendant, by its contract with the husband, had tied up the property for development for ten years. It might not choose to sink a single well, but then it must pay. It had leased many of the surrounding properties and was engaged in developing some of them. It evidently, as was its reasonable right, intended no other, by operations on this 130 acres, should reach the fruits of its expenditure in prospecting on adjoining lands. By this contract, it enjoyed to the full one of the benefits stipulated for; it had one of the kinds of possession intended by both parties; it was not molested in any way. If it had attempted development, and the wife, by legal proceedings or otherwise, had attempted to obstruct it, or even if she had given notice of an adverse claim, which might have deterred the company from an attempt to exercise its right, it would have some standing in equity to resist payment of the first six months. But as, so far as appears, she concurred in the contract, and defendant had the full enjoyment of every right, under the contract, it chose to assert, it cannot set up an after-discovered fact to relieve it from payment for a benefit it had already received. It must be borne in mind that there was no obstacle to the full enjoyment of the ten years term. The president of the company, when the husband informed him of his wife's interest, demanded that she also sign the contract; to this

the husband assented and it was agreed the agent of the company would take the instrument to plaintiff's house that the wife might sign it; this was not done; the defendant was not willing to even trust the husband with the possession of the paper for that purpose. It retained the lease for more than a year afterwards; asserted its right under it, after full knowledge of the wife's interest, by demanding a release in full of all indebtedness before surrendering it. That is, after the full enjoyment of the right for six months, defendant questions the landlord's title when called upon for rent.

If defendant had actually commenced operations on the land within six months and taken from it gas or oil, equity, on its complaint of peril to its rights from the wife's outstanding interest, would probably have decreed that she join formally in the grant before payment of royalty and rent. But the enforcement of such an equity was not asked at this trial. As the case was presented in the court below, the company, after enjoyment of the contract for six months, was not ready to pay; it then learned of the wife's interest, and based its refusal to pay on that ground; when the plaintiff was willing to have the contract technically perfected by the wife's signature, it changed its ground, and offered to surrender on condition that a full release from all indebtedness be executed and delivered; then, after suit brought, made an unconditional surrender of the lease. Not a single authority cited by appellant rules the case in its favor on such a state of facts. All of them are cases where the lessee had been deterred from taking possession by fear of the adverse claim, or where he had been induced to accept the lease by fraud or trick practiced by the lessor.

Here, the lessee had that sort of possession, under its contract, it was entitled to. There was not the semblance of fraud perpetrated or intended. The learned judge of the court below rightly held that as to the rent and royalty payable at the expiration of the first six months, there was no sufficient defence in law or equity.

The assignments of error are overruled and the judgment is affirmed.